Charles Tony Piccuta (258333)
PICCUTA LAW GROUP, LLP
400 West Franklin Street
Monterey, CA 93940
Telephone: (831) 920-3111
Facsimile:  (831) 920-3112
charles@piccutalaw.com

Attorney for Plaintiff
Tremayne Carroll

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMAYNE CARROLL, CDCR # H-73384, | ) Case No.:  3:20-CV-00079-BAS-RBM |
| Plaintiff, | ) **THIRD AMENDED COMPLAINT** |
| | ) **FOR VIOLATION OF CIVIL** |
| v. | ) **RIGHTS UNDER 42 U.S.C. § 1983** |
| C/O TOELE and DOES 1–50, inclusive, | ) **Demand for Jury Trial** |
| Defendants. | ) |

Plaintiff, Tremayne Carroll, by counsel, alleges as follows:

## INTRODUCTION

This actions arises from the despicable and inhumane treatment of a wheelchair-bound inmate in the California Department of Corrections and Rehabilitation state prison system over the course of more than 50 hours.

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983, conferring jurisdiction upon this Court under 28 U.S.C. § 1343.

2. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in San Diego County, which is within this Court's judicial district,

making venue proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3.      Plaintiff, Tremayne Carroll ("Carroll" or "Plaintiff"), was a prisoner at the Richard J. Donavan Correctional Facility in San Diego County, California, at the time of the conduct giving rise to this lawsuit.  Carroll presently resides in Amador County, California, as an inmate at Mule Creek State Prison.

4.      Defendant, Franklin T. Toele ("Toele"), is being sued in his individual capacity.  At all relevant times, he was employed by the state of California as a peace officer for the California Department of Corrections and Rehabilitation ("CDCR").  While engaged in the conduct described herein, Toele was acting under color of state law and within the scope of his employment as a CDCR correctional officer.

5.      Plaintiff is ignorant of the true names and capacities of the Doe defendants, who are therefore sued by such fictitious names.  However, Plaintiff is informed and believes that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein, and that Plaintiff's damages were proximately caused by said Doe defendants.  The reasons these names are not yet known or ascertainable are that initial disclosures have not yet been exchanged, and Plaintiff has not yet had an opportunity to engage in other formal discovery.  Further, Plaintiff has only recently retained counsel to represent him in this action.  Upon ascertaining the true identifies of Does 1 through 50, Plaintiff will amend the operative pleading or seek leave to file an amended complaint as required by law.

## STATEMENT OF FACTS

6.      Carroll has been an inmate in the California state prison system since approximately 1999.

7.      At all relevant times, Carroll, though born a male, has identified as a female.  As a result, he has constantly experienced gender dysphoria.  Carroll's

identification as a female has at all relevant times been generally known by CDCR employees.

8.      During his time in the prison system, Carroll has also been the victim of employee sexual misconduct.  In particular, Carroll was victimized at the Richard J. Donavan Correctional Facility ("RJD") on multiple dates, including, but not limited to, occurrences in 2017 or 2018 and approximately April 2019.  Carroll promptly reported each incident to CDCR employees.

9.      At all relevant times, including during the conduct complained of herein, Carroll used a wheelchair for mobility.  He was also incontinent in that he could not control his bowels.

10.      On November 27, 2019, Carroll was housed in an Administrative Segregation ("Ad-Seg") Unit at RJD.

11.      At approximately 9:00 a.m. on the morning of November 27, 2019, Defendant Toele and Defendant Jane/John Doe, a member of the medical or mental health staff, approached Carroll's cell to provide Carroll with incontinence supplies.

12.      At this time, Toele was aware of Carroll's gender identification.  He was also aware that Carroll had lodged complaints of sexual misconduct against other CDCR employees, including those at RJD.

13.      Outside of Carroll's cell, Toele commanded Carroll to place his hands through the food/security port so that Toele could apply handcuffs.

14.      After Carroll had been handcuffed, Toele and Jane/John Doe entered Carroll's cell.  Jane/John Doe then handed Carroll the incontinence supplies, which included wipes, diapers and tape.

15.      Toele and Jane/John Doe then left Carroll's cell and closed the door behind them.  When they did so, Carroll was still handcuffed.

16.      Toele advised Carroll that he would be right back; however, he did not return.   As a result, Carroll was left handcuffed and alone in his cell in

violation of CDCR policy, reflected in Department Operations Manual No. 51020.6, which dictates that "[r]estrained inmates shall never be left unsupervised."

17.     After it had become apparent to Carroll that Toele was not going to promptly return, Carroll began pounding on his cell door for help.  No one responded.

18.     Carroll was left handcuffed and alone in his cell from that morning until the afternoon of November 29, 2019—a period of more than 50 hours.

19.     During the more than two days that he was restrained, Carroll was unable to avoid urinating and defecating on himself.  He suffered tremendous physical pain and mental anxiety attempting to "hold it," hoping someone would come to his aid.

20.     Before Carroll urinated and defecated on himself over the course of more than 50 hours, he attempted to use the toilet.  Following his "accidents," he also attempted to perform basic personal hygiene and clean himself.  However, because he was handcuffed and confined to a wheelchair, he was unsuccessful in performing these tasks.  In the process of these attempts, Carroll fell out of his wheelchair on numerous occasions, causing further physical pain and mental anguish.

21.     During the more than 50 hours that Carroll was left handcuffed and alone in his cell, dozens of Doe Defendant correctional officers and medical/mental health staff passed by Carroll's door.  The correctional officers and other staff members did so in the process of performing security and welfare checks.

22.     During these checks, Doe Defendant officers peered through Carroll's cell window and saw that he was restrained and alone in a wheelchair.  Carroll informed the officers that Toele had left him handcuffed in the cell.  The officers refused to remove the handcuffs.

23.     While Carroll was restrained and alone, Doe Defendant mental health/medical staff members came to Carroll's cell door to check on his well-being and to administer medication.  Carroll verbally informed and visually showed the staff members that he had been handcuffed and left alone in his cell.  Further, he informed them that this had been the case since the morning of November 27.  However, the staff members refused to take any steps to have Carroll released; they claimed they did not want to get involved.

24.     On November 29, 2019, Carroll wrote on a piece of paper that he had been restrained and was being retaliated against.  He then placed the paper in his cell door window, making it visible to anyone who walked by.

25.     A CDCR employee eventually came to Carroll's cell, saw the note and had Carroll removed and placed in a cage in a dayroom while investigation of the matter ensued.

26.     The conduct complained of herein directly and proximately caused Carroll's injuries, including physical pain, mental suffering and emotional distress.

27.     Defendants, without penological justification and in violation of CDCR policy, allowed this disabled inmate to remain handcuffed and alone in his cell for more than two days.  Carroll was left helpless, wallowing in his own urine and feces for in excess of 50 hours.  The conduct of Defendants was intended to cause injury to Carroll.  The conduct was also despicable and carried out with a willful and conscious disregard for Carroll's rights.  Further, it subjected him to cruel and unjust hardship in conscious disregard of those rights.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Deprivation of Eighth Amendment Right to**
**Protection from Inhumane Conditions of Confinement**
**(Against All Defendants)**

28.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 27 as though fully set forth herein.

29.     Defendants acted under color of state law while engaged in the conduct complained of herein.  Their acts and failures to act deprived Carroll of his rights under the Eighth Amendment to the United States Constitution.

**A.     Defendant Toele**

30.     Carroll faced a substantial risk of serious harm when he was restrained by Toele and left handcuffed and unattended in his cell for more than two days.  The risk of harm to Carroll arose from the creation by Toele of inhumane conditions and the deprivation of basic health, hygiene and safety needs.

31.     Toele used his own handcuffs to restrain Carroll.  Further, Toele was responsible for the supervision of Carroll, while restrained, and for retrieving the handcuffs.  As a result, Toele knew of the substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to address it, e.g., by removing the handcuffs from Carroll on November 27, 2019, or at any time thereafter.

32.     Toele's wanton and unnecessary conduct was completely without penological justification.

33.     The conduct of Toele caused Carroll to suffer the harm described herein, including the mental and physical pain and suffering that accompanied Carroll's unsuccessful attempts to avoid urinating and defecating on himself.

**B.     Jan/John Doe Defendants – Failure to Intercede**

34.     Every Jane and John Doe Defendant saw that Carroll was in his cell, unrestrained and alone.  Some of these defendants were expressly informed by Carroll that Toele had restrained him and left him alone in retaliation for reporting employee sexual misconduct.

35.     Jane and John Doe Defendants each had a duty and realistic opportunity to intervene so as to have Carroll's restraints removed and to end the

deprivation of Carroll's right to minimal civilized measures of the necessities of life.

36.   Jane and John Doe Defendants, through their omissions, actually and proximately caused the harm described herein to Carroll.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Deprivation of First Amendment Right to Be Free from Retaliation
### (Against Toele)

37.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

38.   Toele acted under color of state law while engaged in the conduct complained of herein.  His acts and failures to act deprived Carroll of his rights under the First Amendment to the United States Constitution.

39.   Carroll was engaged in constitutionally protected conduct when he complained of and reported the alleged sexual misconduct of RJD officers.

40.   Carroll's history of complaints was widely known among RJD employees, including by Toele.

41.   The unsupervised restraint of Carroll was because of Carroll's protected conduct.

42.   Handcuffing a wheelchair-bound Carroll and leaving him alone in his cell for more than 50 hours would chill a person of ordinary firmness from exercising his First Amendment rights.

43.   Toele's conduct did not reasonably advance a legitimate penological goal.

44.   The harm to Carroll described herein was actually and proximately caused by Toele's unlawful retaliation.

///

//

1

## **<u>PRAYER FOR RELIEF</u>**

2
3

WHEREFORE, Plaintiff, Tremayne Carroll, by counsel, prays for judgment in his favor and against Defendants as follows:

4
5

A.    For general and special damages in an amount according to proof at trial;

6

B.    For punitive damages in an amount sufficient to punish and deter;

7

C.    For pre-judgment interest as allowed by law;

8

D.    For costs and attorney's fees; and

9

E.    For such other relief as the Court deems just and proper.

10
11

Dated: March 22, 2021                                          PICCUTA LAW GROUP, LLP

12
13

                                                            _____/s/ *C.T. Piccuta*_____

14

                                                            Charles Tony Piccuta

15

                                                            Attorneys for Plaintiff
                                                            Tremayne Carroll

16
17
18
19
20
21
22
23
24
25
26
27
28